## APPEAL OF ESTATE OF SAMUEL P. SCHWING, J. L. HORTENSTINE, COADMINISTRATOR.

Docket No. 3633. Submitted November 16, 1925. Decided February 13, 1926.

1. Transfer of stock by decedent about fourteen months prior to his death, where promissory notes equal to the par value of the stock were given in payment, the stock certificates being attached to the notes as security, *held* to have been a *bona fide* sale for a fair consideration.

2. The decedent a few days before his death surrendered the notes to the makers thereof, with instructions to destroy them. *Held*, the unpaid balance of the notes was a gift made in contemplation of death.

3. Deduction claimed as fee paid to a physician for services rendered the decedent disallowed for lack of evidence.

*G. A. Ruhl, C. P. A.*, for the taxpayer.
*John F. Greaney, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency in estate tax for the year 1921 in the amount of $2,694.98, of which $2,579.37 is in controversy. The disputed portion of the deficiency arises from the inclusion by the Commissioner, in the gross estate of the decedent, of certain shares of stock which had been transferred by the decedent to his son and daughter. The value of the stock is also in controversy, the taxpayer contending that unrealized appreciation should not be used in determining the value. The petition further alleged error on the part of the Commissioner in disallowing a doctor's fee and one-half the amount of the executor's fee. The allegations with respect to the executor's fee were withdrawn.

FINDINGS OF FACT.

1. Samuel P. Schwing died on February 19, 1921, at an age in excess of 60 years, and J. L. Hortenstine and Samuel P. Schwing, Jr., were duly appointed administrators of his estate.

2. The decedent was educated and licensed as a physician, but did not follow his profession. For a number of years he was president of the Schwing Lumber & Shingle Co., of Plaquemine, La., and looked after the logging and timber part of the business. His brother, Edward B. Schwing, was secretary and treasurer of the company, and some time prior to the transaction hereinafter described the brothers had agreed that they would gradually work their sons into the business, so that they would be able in time to take charge of it.

3. On December 19, 1919, the decedent surrendered 1,163 shares of stock which he held in the company, and, at his direction, the secretary issued certificates for 580 shares thereof to Samuel P. Schwing, Jr., 580 shares to Carrie B. Schwing Hortenstine, who was a daughter of the decedent, and 3 shares to the decedent. At or about the same time the son and daughter each gave the decedent a promissory note in the amount of $58,000 in payment for the stock at $100 per share and attached the stock certificates to the notes as collateral security. The notes and stock certificates were placed in a

safe deposit box in a New Orleans bank, which the decedent and his wife held jointly.

4. At the time this transfer was made the decedent contemplated retiring from the business in about five years and so expressed his intention.

5. Dividends in the amounts of $5,800 and $11,600, representing 10 per cent and 20 per cent dividends, were paid on January 6, 1920, and January 10, 1921, respectively, by the company to each of the transferees of the stock here involved. The dividend checks were endorsed by the payees and turned over to the decedent to be applied against the purchase price of the stock as evidenced by the note.

6. In December, 1920, decedent and his brother made a trip to Havana, Cuba, where they were entertained and kept late hours. On their return from Havana they went to Chicago. The decedent was quite active while in Chicago, but while in New Orleans on his way home from Chicago he spent a short time in a hospital, and at that time advised members of his family that he had high blood pressure. Until the time of the illness which preceded his death, he never expressed any alarm as to his condition. On January 26, 1921, Mrs. Schwing insisted upon knowing the condition of the health of her husband and was informed by a physician that he was in the last stages of Bright's disease.

7. On or about February 7, 1921, Mrs. S. P. Schwing, at the direction of her husband, secured the stock certificates and notes from the safe deposit box. The decedent thereupon delivered to his son and daughter the certificates standing in their names and the notes they had executed, stating that the balance due on the notes was canceled and directing them to destroy the notes.

8. At the time the stock certificates and the notes above mentioned were delivered by decedent to his son and daughter there was due on the notes $81,200, after crediting the dividends received. One-half of this amount, or $40,600, was included in the estate-tax return, in accordance with the community property law of Louisiana, as a transfer made in contemplation of death. The Commissioner decreased the gross estate by the amount of $40,600 and increased it by adding thereto $121,220, representing one-half the value of 1,160 shares of stock at $209 per share. This increase was made on the theory that the stock was transferred in contemplation of death and to take effect in possession and enjoyment at or after death.

9. The book value of the stock of the Schwing Lumber & Shingle Co., as disclosed by its balance sheet of December 31, 1920, which did not include appreciation of timber, was $137 per share. The value of $209 per share was determined by the Commissioner by

including appreciation of the value of timber. The valuation of the timber was the subject of conference in the Bureau of Internal Revenue at the time the Commissioner's answer in this appeal was filed. The timber questionnaire filed by the company in 1920 shows the unrealized appreciation in value of the timber to be $358,429.95, equal to $71.68 per share.

10. In 1923, 260 shares of stock were sold at $140 per share; in 1924, 80 shares at $140; and in 1925, 150 shares at $130.

11. The decedent was attended in his final illness by a physician who gave the decedent constant attention during the last 30 days and even slept at his home. In accordance with the custom of the medical profession, this physician never rendered a bill to the estate for his services. However, relatives of the decedent later mailed the physician a check for the services he had rendered.

## DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, under Rule 50.

## OPINION.

GRAUPNER: The principal question for determination is whether the transfer of 1,160 shares of stock by the decedent to his son and daughter in December, 1919, was a *bona fide* sale for a fair consideration or a transfer made in contemplation of death, within the meaning of section 402(c) of the Revenue Act of 1918.

The evidence is that the transferees gave the decedent their notes, each in the amount of $58,000, and deposited the stock certificates as security. The notes were therefore valuable to the extent of the value of the stock given as security, which, from the evidence, was not less than the face of the notes. This, in our opinion, constituted a *bona fide* sale of the stock, and the transaction is accordingly removed from the operation of the presumption created by section 402(c) of the 1918 Act.

The taxable amount was that of the unpaid balance of the notes which was canceled by the decedent early in February, 1921, within two weeks prior to his death. The decedent forgave the indebtedness amounting to $81,200, one-half of which, or $40,600, in accordance with the community property law of Louisiana, should be included in the gross estate of the decedent.

In view of this holding, it is unnecessary to determine the value of the stock here involved at the time of the decedent's death.

The deposition of the physician who attended the decedent discloses that he received a check for services rendered, but there is no evidence of the amount of the check, and the disallowance by the Commissioner of the amount claimed as a doctor's fee is approved.